**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **JEFFERY MULLINS** | § | |
| *Plaintiff* | § | |
| | § | |
| **VS.** | § | |
| | § | **CIVIL ACTION NO._____** |
| | § | |
| **MEDINA COUNTY, TEXAS AND** | § | |
| **WESLEY WILLIAMS** | § | |
| *Defendants* | § | |
| | § | **JURY TRIAL DEMANDED** |
| | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES **JEFFERY MULLINS**, referred to herein as Plaintiff, complaining of Defendants **MEDINA COUNTY, TEXAS** ("County") and **WESLEY WILLIAMS** ("Deputy Williams"), in his individual capacity, hereinafter called Defendants, and for cause of action, would respectfully show unto the Court and jury the following:

## I.   NATURE OF THE CASE

**THE CLAIM:** Medina County Sheriff's Office Deputy Wesley Williams used excessive force against Jeffrey Mullins in violation of his individual rights under the Fourth Amendment to the United States Constitution when he illegally detained him on 31 December 2021, violently slamming Mr. Mullins to the ground without factual or legal cause to do so. This violence was caused by a Medina County Sheriff's Office "standard policy" wherein Deputy Williams was "required" to identify everyone on scene. Mr. Mullins refused to identify himself, which is completely permissible under Texas law when a person is not under arrest or being detained. Following Mr. Mullins' refusal, Deputy Williams body slammed him to the ground, causing Mr. Mullins significant injury. Mr. Mullins' injuries resulted directed and only from this clearly

1

excessive use of force; and the excessiveness of that force was clearly unreasonable. The actions alleged herein are of such a nature as to shock the conscience and are cruel and unusual in their oppressiveness.

## II.    PARTIES

1. Plaintiff, **JEFFERY MULLINS** is a resident of Medina County, Texas.

2. Defendant **MEDINA COUNTY** is a political subdivision of the State of Texas and the Medina County Sheriff's Office is an agency operated thereunder.

3. The Medina County Sheriff's Office is funded and operated by the Medina County Commissioners Court. County Judge Chris Schuchart is the chief executive of Medina County.

4. County Judge Schuchart is responsible for implementing the policies and decisions of the Medina County Commissioners Court as the County's primary administrator.

5. County Judge Schuchart and the Commissioners Court are tasked with appropriating, reviewing, and implementing the Medina County Sheriff's Office budget, policies, procedures, practices, and customs, including the acts and omissions related thereto, at issue in this lawsuit.

6. Sheriff Randy Brown is the sheriff of Medina County and the primary policymaker tasked with creating, implementing, and reviewing the Medina County Sheriff's Office policies, procedures, practices, and customs.

7. Medina County may be served by and through County Judge Chris Schuchart at the Medina County Courthouse, 1300 Ave. M, Room 250, Hondo, TX 78861, or wherever he may be found.

8. Defendant **WESLEY WILLIAMS** is a police officer employed by the Medina County Sheriff's Office and at all times material herein was a police officer acting in the course and scope of his employment for Medina County, TX. He may be served at his place of employment at the Medina County Sheriff's Office located at 801 Ave. Y, Hondo, TX 78861, or wherever he may be found. Defendant Williams is being sued in his individual capacity.

### III.   JURISDICTION

9.   The subject matter in controversy and damages sought are within the jurisdictional limits of this Court.

10.   This Court also has jurisdiction over this suit under 42 U.S.C. § 1983.

11.   Venue is also appropriate in the Western District of Texas pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in Medina County, Texas, which is in the San Antonio Division of the Western District of Texas.

### IV.   FACTS AND ALLEGATIONS

12.   On 31 December 2019, Jeffery Mullins had his constitutional rights violated when he was illegally detained and excessively body slammed by Deputy Wesley Williams of the Medina County Sheriff's Office.

13.   The incident was captured on Defendant's body camera device. The audio of the incident was transcribed into a one volume Reporter's Record by Maggie Raiford, a Certified Shorthand Reporter (CSR 9192) in and for the State of Texas, and certified on 7 July 2021. All quotes attributed to Mr. Mullins, Defendant, or S.S. are sourced from Ms. Raiford's transcription.

14.   At approximately 15:28 on that day, Defendant was dispatched to a home on CR 7460 in Yancey, Medina County, Texas, for a suicide outcry. The property he was dispatched to is owned by Plaintiff, Mr. Mullins. The suicide outcry was made by S.S., Mr. Mullins' then-fiancée, now wife.

15.   Upon his arrival, Defendant made contact with S.S. and Mr. Mullins, who were standing at the gate to Mr. Mullins' property, holding some of S.S.' belongings. Mr. Mullins informs Defendant that S.S. had been drinking and "made this decision" — the decision to call 911 — "without discussing it" with him.

16.   Defendant then asked S.S. to step over to another area with him to discuss what was going on. Defendant leads S.S. over to the front of his police vehicle. S.S. requests that Defendant grab a bottle of water from Mr. Mullins, who was still standing at the gate.

3

17. Defendant approached Mr. Mullins and asked whether S.S. had access to weapons in the home. Mr. Mullins replies "I don't think so. I mean, everything's locked up."

18. Defendant then asks Mr. Mullins for his driver's license. Mr. Mullins inquires as to why Defendant needs his license. Defendant replies, "to go in the report," to which Mr. Mullins replies, "Nah, you don't need mine. She called you."

19. Defendant then explains that he "just arrived with a gentleman that's standing outside next to a young lady that's having suicidal ideations. I need to identify everybody for the report."

20. Mr. Mullins again tells Defendant that Defendant does not need his license.

21. Defendant then proceeds to ask S.S. who Mr. Mullins is to her. She replies that he is her fiancé. Defendant asks S.S. for Mr. Mullins' name.

22. Mr. Mullins then tells S.S., "Babe, he doesn't need to know anything about me. First of all, I didn't call you." S.S. tells Defendant Mr. Mullins' name "is not pertinent information."

23. Defendant, now advancing toward Mr. Mullins from his police vehicle, then angrily tells Mr. Mullins: "You're on location and I have the right to identify anybody on location if I receive a 911 call to anybody – to a residence."



(ILLUSTRATION A)

24. Mr. Mullins then turns to walk back through the gate to his property, stating "so, right now, I'm not…"

25. Before Mr. Mullins can finish his phrase, Defendant says "Nope. Stop. You're being detained or you're about to go – you about to go in handcuffs" and proceeds to grab Mr.

Mullins' left wrist. Unbeknownst to Defendant, Mr. Mullins experiences visual difficulty in his left eye, so he had to turn around to face Defendant to see him well.



(ILLUSTRATION B)

26. Mr. Mullins is visibly and obviously unarmed during the entire encounter, having only his vape pen — an electronic nicotine inhalation device — in his hands.

27. As Defendant is accosting Mr. Mullins, Mr. Mullins asks "What did you say?" at approximately 3:25 on Defendant's body camera recording.

28. Defendant then says "Sir," to which Mr. Mullins replies, "Stop."

29. Defendant then violently and unjustifiably body slams Mr. Mullins face first onto the gravel road and then punches or shoves Mr. Mullins to cause him to turn over onto his back. In his incident report for Incident No. 06967, Defendant characterizes this body slam as a "front leg sweep."



(ILLUSTRATION C)



(ILLUSTRATION D)

30. Mr. Mullins then tells Defendant to stop, saying "I didn't resist you." Defendant replies, "Hey, you are resisting. It's called 'passive resistance.' I told you to stop." At this point, Mr. Mullins is on the ground, visibly injured.



(ILLUSTRATION E)

31. S.S., obviously upset by the unjustified body slam, walks from the police unit over to where Mr. Mullins is still on the ground with Defendant standing menacingly above him. When she arrives, she tells Defendant to "stop." He yells at her to back up.

32. He then yells at Mr. Mullins to roll over and give him his hands while placing handcuffs on Mr. Mullins' wrists.

33. Two paramedics from Community EMS walk up from behind Defendant's police unit. As they approach, Defendant says, "I got one. Probably a busted nose if you can get your kit, please." One of the two paramedics responds, "Oh yeah. He's busted alright."



(ILLUSTRATION F)

34. Mr. Mullins then provides Defendant his name and date of birth. S.S. remarks to Defendant that Mr. Mullins "didn't really do anything."

35. Defendant replies, "Yes, he did…I told him multiple times to stop. He attempted to walk away from me. I told him he was detained." Mr. Mullins then tells Defendant he only told him once to "stop." Thereafter, he provides Defendant with his driver's license number.

36. Defendant then discusses with S.S. and the paramedics S.S.' drinking and whether there is another ambulance available.

37. Defendant asks Mr. Mullins whether he wants to be transported to the hospital. Mr. Mullins answered, "No, I'm good." The paramedics then begin treating his injured nose, remarking that "it's busted…just right above…the bridge."



(ILLUSTRATION G)

38. A few minutes later, S.S. asks Defendant, "What did he [Mr. Mullins] do?" Defendant replies "He didn't follow the lawful commands of a Texas peace officer."

39. S.S. later tells Defendant he's there to take her to get evaluated. Defendant states, "Uh-huh. And I have every right to identify everybody on location…He was refusing to identify. Are we on the same page?"

40. Defendant and S.S. continue discussing the incident and the circumstances prompting her to call for assistance. She mentions she and Mr. Mullins were having an issue in their relationship, specifically remarking that it was not domestic violence related at all.

41.  Defendant, the paramedics, and S.S. then discuss getting her evaluated. S.S. provides Defendant with her identifying information. S.S. then accompanies the paramedics to the ambulance.

42. A short time later, Defendant discusses the incident and the suicide outcry with Mr. Mullins. Mr. Mullins reiterates that S.S. did not discuss with him her suicidal ideations. He gives Defendant background information on their relationship and some of the difficulties they were having.

43. Mr. Mullins informs Defendant that he knows the procedure for getting S.S. mental help. He also informed Defendant that he had been a nurse for 23 years up to that point and had previously been a medic.

44. Defendant then tells Mr. Mullins the following: "No matter what it is; but when I do arrive, okay, and I got multiple people on location, I do have the right as a Texas peace officer to identify everybody on location…*That's our standard policy*. You've got to follow lawful commands." Mr. Mullins then tells Defendant that he's an "old man" and he's "clean."

45. Defendant asks Mr. Mullins whether he wants to speak with his supervisor, which Mr. Mullins declines. Defendant then tells Mr. Mullins, "I don't want to jack you up with a resisting arrest or a detention…collar, okay?," implying that he is being considerate or benevolent, despite body slamming a man for whom he had no reasonable suspicion, probable cause, or even a scintilla of evidence that he was in any way involved in a crime.

46. He then explains to Mr. Mullins that "they" — the Medina County Sheriff's Office, presumably — had an "armed standoff, multiple suicides with firearms in the past couple of weeks, all right?," attempting to justify the unnecessary force and injury he inflicted upon Mr. Mullins.

47. Defendant allows Mr. Mullins to retrieve his belongings and releases him.

## V.

## CAUSES OF ACTION

### COUNT ONE
### EXCESSIVE FORCE

**Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983 Against Defendant Williams**

48. Mr. Chappell repeats and re-alleges each and every allegation contained in the above paragraphs as though fully delineated below.

***Failure To Identify: The Law***

49. Codified under Section 38.02 of the Texas Penal Code, the law on failure to identify is as follows:

> **(a)  A person commits an offense if he intentionally refuses to give his name, residence address, or date of birth to a peace officer who has *lawfully arrested* the person and requested the information.**
> **(b)  A person commits an offense if he intentionally gives a false or fictitious name, residence address, or date of birth to a peace officer who has:**
>> **(1)  lawfully arrested the person;**
>> **(2)  lawfully detained the person;  or**
>> **(3)  requested the information from a person that the**
> **peace officer has good cause to believe is a witness to a criminal offense.** Tex. Pen. Code, §38.02 (2003) (emphasis added).

50. Defendant stated on multiple occasions that he had a "right" to identify everyone on location. He also stated that it is the Medina County Sheriff's Office's "standard policy" to identify everybody on location.

51. It is obvious in the video memorializing the assault that Defendant Williams became frustrated that Mr. Mullins refused to provide him with his identification and that anger culminated in him unjustifiably body slamming him without reasonable suspicion or probable cause whatsoever.

52. The law requires identification by a subject ***who has been arrested***, and at no time before then.

53. The Fifth Circuit, in *Goodson v. City of Corpus Christi*, dealt with this issue in relation to a *Terry* frisk of a man who vaguely matched the description of a suspect, citing a Supreme Court case with pinpoint accuracy to Mr. Mullins' contact with Defendant: "Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual…[and] ask to examine the individual's identification…***as long as the police do not convey a message that compliance with their request is required***." *Goodson v. Corpus Christi*, 202 F.3d 730, 738 (5th Cir. 2000)(citing *Florida v. Bostick*, 501 U.S. 429, 435, 115 L. Ed. 2d 389, 111 S. Ct. 2382 (1991)(emphasis added)).

54. Mr. Mullins had ***no legal duty*** to provide his information to Defendant Williams until such time when he was arrested, which he promptly did after Defendant Williams slammed him to the ground. Notwithstanding this lack of a legal duty and Supreme Court precedent, Defendant Williams not only conveyed a salient message that compliance with his request was required, he assaulted Mr. Mullins because he refused to comply with that request.

55. As such, his detention — without reasonable suspicion or probable cause — and the force used against him were without legal authority and excessive, in violation of the Fourth Amendment guarantee against unreasonable searches and seizures.

### ***Resisting Arrest: The Law***

56. Codified under Section 38.03 of the Texas Penal Code, the law on resisting arrest is as follows:

> **(a) A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction *from effecting an arrest, search, or transportation of the actor* or another by using force against the peace officer or another.** Tex. Pen. Code, §38.03 (1994) (emphasis added).

57. For clarity, reasonable suspicion "must be supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an

intrusion…The officer, of course, must be able to articulate something more than an 'inchoate and unparticularized…'hunch.'" *Goodson,* at 736 (citing *United States v. Michelletti,* 13 F.3d 838, 840 (5th Cir. 1994) (en banc)).

58. Probable cause, by contrast, "is present when the totality of the circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id.*, at 740 (citing *Vance v. Nunnery*, 137 F.3d 270, 276 (5th Cir. 1998 (quoting *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996)).

59. Accordingly, Defendant Williams had no reasonable suspicion to detain Mr. Mullins for any crime or probable cause to arrest Mr. Mullins for Resisting Arrest — as he implied he would be able to — because he was not attempting to arrest, search, or transport Mr. Mullins. He also had no reasonable suspicion that he had committed this crime, as no such prior attempted detention or arrest had occurred.

60. This is especially true because of the call being placed to the suicide hotline rather than to 911. The nature of the call did not supply any evidence whatsoever that would lead a reasonable officer to believe Mr. Mullins or anyone else on scene was involved in any criminal activity in the same way a call placed to 911 might.

61. Defendant Williams, acting under color of law, deprived Mr. Mullins of the rights and privileges secured him by the Fourth and Fourteenth Amendments to the United States Constitution to be free from illegal and unreasonable seizures by the use of force.

62. Accordingly, Mr. Chappell commences this action pursuant to 42 U.S.C. § 1983.

63. "In order to present a successful claim of excessive force under § 1983, the plaintiff must show (1) an injury; (2) that resulted directly and only from a use of force that was excessive to the need of force; and (3) that the use of force was unreasonable under the circumstances." *Sullivan v. Allred,* 297 Fed. Appx. 339, 342 (5th Cir. 2008) (citing *Ramirez v. Knoulton,* 542 F.3d 124, 128 (5th Cir. 2008), *Bush v. Strain,* 513 F.3d 492, 501 (5th Cir. 2008), and *Freeman v. Gore,* 483 F.3d 404, 416 (5th Cir. 2007) (citing *Tarver v. City of Edna,* 410 F.3d 745, 751 (5th Cir. 2005)(see also *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016)).

64. Mr. Mullins was unquestionably injured in his body slamming by Defendant. His injury was visible, on scene, to the paramedics, S.S., and Defendant. As the Fifth Circuit has

opined, "the eggshell skull rule is applicable in 42 U.S.C. § 1983 cases," recognizing that "a tortfeasor [ — here, Defendant Williams —] takes his victim as he finds him." *Darden v. City of Fort Worth, Texas,* 880 F.3d 722, 731 (5th Cir.), *cert. denied sub nom. City of Fort Worth, Tex. v. Darden,* 139 S. Ct. 69, 202 L.Ed. 2d 23 (2018). (citing *Dunn v. Denk*, 54 F.3d 248, 251 (5th Cir. 1995), *rev'd on other grounds* 79 F.3d 401 (5th Cir. 1996) (en banc); *see also Koch v. United States*, 857 F.3d 267, 274 (5th Cir. 2017).



(ILLUSTRATIONS H AND I)

65. With respect to the injury, significant injury is not required, per se; however, the injury must be "more than de minimis." *Hanks v. Rogers*, 853 F. 3d 738 (5th Cir. 2017), (citing *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) (citing *Harper v. Harris County, Tex.*, 21 F.3d 597, 600 (5th Cir. 1994)), but "the injury must be more than *de minimis*," (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir.1999)).

66. Mr. Mullins' injury resulted directly and only from a use of force that was excessive to the need of force, to wit: being body slammed when he was not posing any threat to Defendant, *visibly and obviously* unarmed, and under no legal duty whatsoever to identify himself, as he had not yet been detained.

67. The excessiveness of the force was clearly unreasonable, particularly considering Mr. Mullins was not only not posing a threat to Defendant, but was literally walking away from Defendant when he was accosted. He was not taking any aggressive stances, movements, or actions when Defendant Williams decided to unjustifiably put hands on him and forcefully tackle him to the ground.

68. "The relationship between the need and the amount of force used" must be considered and assessed by the officers using force to "effectuate [a] subject's compliance." *Newman v. Guedry,* 703 F.3d 757, 763 (5th Cir. 2012) (quoting *Deville v. Marcantel,* 567 F.3d 156, 167 (5th Cir. 2009) (see also, *Hanks v. Rogers*, 853 F. 3d 738 (5th Cir. 2017)).

69. An officer tasing, striking, or otherwise violently slamming an arrestee who is not actively resisting arrest is a constitutional violation. *Darden v. City of Fort Worth, Texas,* 880 F.3d 722, at 731 (5th Cir.), *cert. denied sub nom. City of Fort Worth, Tex. v. Darden,* 139 S. Ct. 69, 202 L.Ed. 2d 23 (2018).

70. Fifth Circuit case law establishes that the degree of force an officer can employ is reduced when an arrestee is not actively resisting arrest. *Id.*

71. Mr. Mullins was not actively, passively, or otherwise resisting arrest when forcefully tackled by Defendant Williams.

72. In determining whether the officer's use of force was "objectively reasonable," courts utilize a three-factor test outlined in the seminal Supreme Court case *Graham v. Connor:*

    a.    *Severity of the crime;*

    b.    *Immediate threat;* and

    c.    Whether the subject is *actively resisting* or *attempting to evade arrest by fleeing. Graham v. Connor,* 490 U.S. 386, 396 (1989).

73. Analyses surrounding whether a particular use of force was objectively reasonable require "a careful balancing of the nature and quality of the intrusion on the individual's…interests against the countervailing governmental interests at stake…[requiring] careful attention to the facts and circumstances of each particular case." Seth Stoughton, et al., Evaluating Police Uses of Force (2020) (citing *Graham v. Connor*, at 396).

74. "Reasonableness" is judged from the perspective of a *reasonable officer on the scene*, as opposed to with the "20/20 vision of hindsight." *Ibid* (citing *Graham v. Connor*, at 396)(emphasis added).

75. Under *Graham*, courts are charged to rely on what a "reasonable officer" would have perceived, irrespective as to whether the officer *actually* perceived it that way. *Ibid* (citing *Graham v. Connor*, at 396).

76. As to the three elements of the *Graham* objective reasonableness test, **none** of the three factors is satisfied in favor of Defendant.

77. At the point Defendant perceived Mr. Mullins, he was merely standing at the gate of his property. He had not been accused of a crime; implicated in a crime; suspected of having committed a crime, or even referenced at all, on information and belief, in the nature of his fiancée's call to the suicide hotline regarding her suicidal thoughts. As such, there is **no** severity of any crime because no crime whatsoever had been committed.

78. Consequently, no force **whatsoever** was justified. However, **even if** Mr. Mullins had committed resisting arrest or failure to identify — both generally misdemeanors under Texas law — the Fifth Circuit has said that the "severity" factor of *Graham v. Connor* "militated against the use of force where the alleged crime was a misdemeanor," rendering Defendant's use of force wholly unjustified and excessive. *Reyes v. Bridgwater*, 362 F.App'x 403, 407 n.5 (5th Cir. 2010).

79. The other two factors, however, also weigh heavily against Defendant Williams.

80. Mr. Mullins was not an immediate threat, as he was standing at the gate at one point and then walking away. He took no steps towards Defendant and had a vape pen — visibly **not** a weapon — in his hand. He did not even verbally berate, disrespect, or raise his voice to Defendant. He was calm throughout the entire encounter, remarking only that Defendant did not need his information because he was there for S.S.'s suicidal ideations, not him.

81. Mr. Mullins was also not actively or passively resisting Defendant or attempting to flee or evade arrest. He was standing by himself and walking away prior to Defendant saying he was being detained. Even after Defendant began attempting to affect his detention, Mr. Mullins did not fight or resist him. He was most certainly not attempting to flee either.

82. The fact that no crime had been committed or even suspected and Mr. Mullins was not a threat whatsoever makes it clear that Defendant's belief that force was needed and the accompanying use of force were completely unreasonable and the force completely excessive. As the Fifth Circuit opined in *Hanks*, "a reasonable officer on the scene would have

known that suddenly resorting to physical force as [Defendant Williams] did would be clearly excessive and clearly unreasonable." *Hanks*, at 745.

83. The *Hanks* court opined further, noting "…clearly established law demonstrated that an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance…" *Id.*, at 747.

84.  Mr. Mullins suffered physical injury, pain, mental anguish, and a diminution in his ability to work as a nurse as a direct result of the excessive force used against him.

85.  Defendant Williams caused Mr. Mullins to endure extraordinary pain and suffering by forcefully slamming him to the ground.

86.  These injuries were only caused by this forceful slamming and not by any other means.

## COUNT TWO

### Fourth Amendment § 1983 *Monell* Claim against Medina County, Texas

87. Plaintiff incorporates by reference all of the foregoing and further alleges the following:

88. The conduct of Defendant Williams constituted unlawful, unreasonable excessive force against Mr. Mullins without legal cause or justification.

89. At all material times, Defendant Williams acted under color of state law, as an agent of Medina County, Texas.

90. Defendant Williams was acting within the course and scope of his duties as a Medina County Sheriff's Office deputy when he brutally assaulted Mr. Mullins. At all times relevant to this lawsuit, Deputy Williams was clad in his Medina County Sheriff's Office-issued uniform.

91. Sheriff Randy Brown was and is the Defendant's policymaker for all matters related to the Medina County Sheriff's Office, having been delegated the policymaking authority by the Medina County Commissioners Court.

92. Consequently, Medina County had or ratified the following policies, customs, and/or practices in place when Defendant Williams attacked Mr. Mullins:

a.  Requiring the identification of all subjects on location — during consensual encounters — when dispatched to a call, irrespective as to whether the subject was in any way involved, implicated, accused, or otherwise connected to the nature of the call.

93. Sheriff Brown and his command staff were all deliberately indifferent to the natural by-products of this policy, practice, and/or custom, of which he was aware, authorized, ratified, accepted, exacerbated, and encouraged, instead of rectifying it and ensuring civilians were not hurt by it.

94. It was clear that a constitutional violation was a very likely outcome of the ratification, adoption, and promotion of this policy.

95. Sheriff Brown and his command staff knew or should have known that requiring the identification of all subjects on location — during consensual encounters — when dispatched to a call, irrespective as to whether the subject was in any way involved, implicated, accused, or otherwise connected to the nature of the call would result in citizens justifiably refusing to provide their information and consequently being detained or arrested illegally and subjected to unjustifiable force.

96. This policy, *supra*, was actually known, constructively known, and/or ratified by Medina County and its policymakers, including Sheriff Brown, and was promulgated with deliberate indifference to Mr. Mullins' rights under the United States Constitution and the rights of all others making contact with Medina County deputies. The policymakers of the Medina County Sheriff's Office knew that their deputies would continuously be put in situations wherein constitutional violations like those aforementioned in this complaint would occur. This policy made it highly likely that such constitutional violations as those previously described would occur, under color of state law. The previously mentioned policy was a moving force of Mr. Mullins' constitutional deprivations and injuries, causing him to experience physical and mental injury and suffer damages.

## Qualified Immunity under § 1983

97. County Employees may be entitled to qualified immunity as to their individual liability. That immunity is waived, however, upon a showing by the Plaintiff that:

a.  The individual's acts deprived the party of constitutional rights under color of law;

b.     The deprived rights were clearly established, constitutional rights in existence at the time of the acts complained of; and

c.     Such acts were not objectively reasonable under the circumstances, that is, no reasonable official could have believed at the time that the conduct was lawful.

98. "In 'an obvious case,' [*Graham v. Connor*] and [*Tennessee v. Garner*] may supply the "clearly established law." *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) (citing *Mullenix v. Luna*, 136 S.Ct. 305, 308, 193 L. Ed. 2d 255 (2015)) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (*per curiam*)); *see also Cooper*, 844 F.3d at 524. This case is an obvious case of excessive force and violation of the Fourth Amendment right against unreasonable searches and seizures, because Mr. Mullins was not suspected of committing any crime; Defendant had developed no reasonable suspicion that he had committed a crime; and Defendant had developed no probable cause to arrest him for a crime, making the force used completely unjustifiable.

99. Defendant Williams, acting under color of state law, enforcing the policies, customs, and/or practices of the Medina County Sheriff's Office, deprived Mr. Mullins of his civil liberties, without due process of law, by assaulting him unlawfully and unreasonably with clearly excessive force.

100. The Fifth Circuit has, in denying qualified immunity for officers, "placed weight on the quickness with which law enforcement personnel have escalated from negotiation to force." *Brothers v. Zoss*, 837 F.3d 513, 520 (5th Cir. 2016). The Court opined further to that end in the *Hanks* case, noting that "our case law clearly established that [the officer] should have continued to verbally negotiate — including by threatening force, if necessary — rather than abruptly resorting to 'actual' physical force." *Hanks*, at 748.

101. No reasonable official could have believed that assaulting Mr. Mullins's for refusing to provide his information when he was not legally required to do so was lawful, let alone humane or remotely appropriate "Any reasonable officer should have realized that [Deputy Williams's unlawful, unreasonable assault and illegal detention of Mr. Mullins] offended the Constitution." *Taylor v. Riojas*, 141 S.Ct. 52, at 54 (2020).

102. The Fifth Circuit has also recognized a citizen's right to be free from unlawful restraint in *Trammel v. Forge*. In that case, the court instructed that the "central concept [with respect to qualified immunity] is that of 'fair warning:' the law can be clearly established 'despite

notable factual distinctions' between the precedents relied on and the cass then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Trammel v. Forge*, 868 F.3d 332, 339 (5th Cir. 2017).

103. The acts of Defendant Williams were unreasonable under the circumstances when viewed objectively.

104. Defendant Williams was deliberately indifferent to the excessive risk of harm to Mr. Mullins in the actions he took. Such acts deprived Mr. Mullins of and violated his clearly established constitutional rights and were not objectively reasonable.

105. The acts of Defendant Williams clearly violated established rights under the Constitution and statutes. A reasonable person would have known that Mr. Mullins's constitutional rights of protection against unreasonable searches and seizures were enshrined by the Fourth Amendment to the Constitution and that his actions were violative of such rights.

106. The acts of Defendant Williams were salient in their wrongness and grossly offensive. Only an officer violating the law or who is plainly incompetent would perform such an act as body slamming a subject on whom he has neither reasonable suspicion nor probable cause to detain or arrest, let alone subject to physical force. Thus, Defendants are liable to Plaintiff for the damages caused by their actions, which were the direct and proximate causes, in each count alleged above respectively, of Mr. Mullins's injuries.

## VIII.
## PUNITIVE DAMAGES

107. Mr. Mullins repeats and re-alleges each and every allegation contained in the above paragraphs as though fully delineated below.

108. From the objective viewpoint of Defendant Williams, at the time of the occurrence of the excessive force, said Defendant's conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and specifically, to Mr. Mullins, because of the extent of his physical injuries.

109. As a direct, proximate, and producing cause and the intentional and egregious conduct of Defendant Williams, which was recklessly or callously indifferent to Mr. Mullins' constitutional rights, Mr. Mullins is entitled to punitive damages in an amount within the jurisdictional limitations of this Court.

## IX.
## DAMAGES

110.  Mr. Mullins repeats and re-alleges each and every allegation contained in the above paragraphs as though fully delineated below.

111.  Plaintiff seeks monetary relief and for judgment of all the other relief to which he deems himself entitled.

112.  Mr. Mullins' injuries were foreseeable and directly and proximately caused by the excessive force used against him.

113.  Mr. Mullins is thus entitled to recover all actual damages allowed by law. The Defendant's conduct shows malice, wanton disregard, and reckless or callous indifference to his constitutional rights. He is thus entitled to punitive damages against Defendant.

114.  As a direct and proximate result of the occurrence underlying this lawsuit, Mr. Mullins suffered:

b.   Physical injuries, including impairment;
c.   Physical pain and suffering;
d.   Deprivations of his liberty;
e.   Permanent physical disfigurement;
    f.   Emotional distress, torment, and mental anguish; and
g.   Reasonable and necessary medical care to treat his injury in the past and future.

115.  Plaintiff seeks to recover reasonable attorney's fees and costs of court, and hereby requests the award of punitive damages, pursuant to 42 U.S.C. § 1983 and § 1988.

## X.
## ATTORNEY'S FEES

116. If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. §1988.

## XI.
## JURY DEMAND

117. Plaintiff respectfully requests a jury trial in this matter.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against all Defendants, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully Submitted,

**WEBB CASON & MANNING, P.C.**
710 Mesquite Street
Corpus Christi, Texas 78401
Telephone:      (361) 887-1031
Facsimile:      (361) 887-0903


By: */s/ Matthew S. Manning*
    MATTHEW S. MANNING
    State Bar No.: 24075847
    General Correspondence Email:
    matt@wcctxlaw.com
    PATRICK L. BEAM
    State Bar No.: 01955560
    serviceplb@pbeamlaw.com
    **\* E-Service Email: service@wcctxlaw.com**
    **\* E-Service is only accepted at the above**
    **designated e-service e-mail address.**

    ATTORNEYS FOR PLAINTIFF