IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JEFFERY MULLINS, | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | 5-21-CV-01292-FB-RBF |
| MEDINA COUNTY, TEXAS, WESLEY WILLIAMS, | § § § § | |
| *Defendants.* | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant Medina County, Texas, and Wesley Williams's (collectively, "Defendants") Motion to Dismiss. *See* Dkt. No. 43. All pretrial matters in this action have been referred for resolution pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 8. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, Defendants' Motion to Dismiss, Dkt. No. 43, should be **GRANTED IN PART** and **DENIED IN PART**.

**Consideration of Evidence Attached to the Motion to Dismiss**

Normally at the motion-to-dismiss stage, a court only considers the facts as alleged in the complaint, taken as true. In this case, however, the Court has additionally considered video evidence attached to the originally filed motions to dismiss, Dkt. Nos. 5 & 11, and incorporated in the present motion to dismiss. *See* Mot. at 4. It is appropriate to consider evidence attached to a Rule 12(b)(6) motion if it involves facts that "'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir.

1

2010) (quotation omitted); *Robles v. Ciarletta*, 797 F. App'x 821, 831 (5th Cir. 2019) (considering video footage at motion-to-dismiss stage). The events captured in the video footage are central to Mullins's claims, the video is extensively referenced in the Amended Complaint, and the video is referred to by both parties in the motion-to-dismiss briefing. Accordingly, it is appropriate to consider the video evidence at this stage.

The video does not obviate the Court's obligation to presume the facts alleged in the Amended Complaint are true. The Court will only reject Mullins's version of events when it is "obviously contradict[ed]" by the video evidence. *See Quinette v. Reed*, 805 F. App'x 696, 700 (11th Cir. 2020) (discussing review of video in motion to dismiss context); *Scott v. Harris*, 550 U.S. 372, 379-81 (2007) (considering video evidence at summary judgment stage and viewing facts in light most favorable to nonmovant unless nonmovant's version of facts are clearly contradicted by the video evidence); *Thompson v. Mercer*, 762 F.3d 433, 435 (5th Cir. 2014) (same). Accordingly, any facts offered by Mullins will be accepted as true unless clearly contradicted by the video evidence.

## Factual and Procedural Background

On December 31, 2019,[1] Deputy Wesley Williams of the Medina County Sheriff's Office was dispatched to the home of Jeffery Mullins, located in Medina County, Texas, in response to a suicide outcry made by Mullins's then-fiancé, Shannon Smith. When Deputy Williams arrived, Smith and Mullins were standing outside a gate to the property. Mullins informed Deputy Williams that Smith had made the call without discussing it with him. Deputy Williams asked Smith to move a short distance away from Mullins while he questioned her. Deputy Williams then asked Mullins whether Smith had access to any weapons in the house, and Mullins

---

[1] Occasional references in Mullins's briefing to the event occurring on December 31, 2021 appear to be a typo, as the original complaint was filed on December 29, 2021.

responded, "I don't think so. I mean, everything's locked up." Am. Compl. ¶ 17 (Dkt. No. 42), Dkt. No. 5-1 at 0:02:18 (video from Deputy Williams's body-worn camera). Deputy Williams asked for Mullins's driver's license for his report, and Mullins responded that he didn't need to provide it because Smith was the one who made the call. Dkt. No. 5-1 at 0:02:31. Deputy Williams said he needed to identify everybody for the report, but Mullins again refused. *Id*. at 0:02:31-46. Deputy Williams then asked Smith what her relationship was with Mullins, and she told him Mullins was her fiancé. *Id*. at 0:02:58. He asked Smith for Mullins's name, but Mullins interjected, saying "Babe, he doesn't need to know anything about me. First of all, I didn't call you," after which Smith responded to Deputy Williams "it's not pertinent information." *Id*. at 0:03:08, Dkt. No. 46-1 at 5:23-25 (transcript of audio from Deputy Williams's body-worn camera).

This is where events began to escalate. Deputy Williams began walking towards Mullins, telling Mullins that he [Williams] had "a right" to identify anyone on location upon receiving a 911 call. Dkt. No. 5-1 at 0:03:16. Mullins turned his back to Deputy Williams and began walking away. He only took a few steps when Deputy Williams said, "nope, stop, you're being detained" as he grabbed Mullins's wrist. Mullins stopped walking and turned around. *Id*. at 0:03:19. With his hand still on Mullins's wrist, Deputy Williams said, "you're being detained . . . you're about to go in handcuffs." *Id*. at 0:03:23. At this point, the two men were standing close together, both stationary, with Deputy Williams holding Mullins's wrist. Then, from 0:03:27 to 0:03:29 of the video, Mullins either pulled his wrist away or Deputy Williams shook Mullins's wrist, or some combination thereof, and Deputy Williams took Mullins to the ground. Mullins claims he did not pull away from Deputy Williams's grasp or attempt to break his grip. Resp. at 9 (Dkt. No. 46); Am. Compl. ¶¶ 25-30, 81. As he was taken down, Mullins's face hit the ground, causing his face

3

to visibly bleed. Dkt. No. 5-1 at 0:03:33. Mullins, lying on his back, protested that he wasn't resisting, to which Deputy Williams responded, "you are resisting, it's called passive resistance, I told you to stop." *Id.* at 0:03:36.

Mullins alleges that he did not offer any resistance while on the ground. Resp. at 10; Am. Compl. ¶ 81. Deputy Williams turned Mullins on his side with minimal struggle and instructed him, "roll over and give me your hands." Dkt. No. 5-1 at 0:03:47. Mullins complied, and Deputy Williams successfully handcuffed Mullins within seconds. Although Mullins alleges Deputy Williams "punche[d] or shove[d]" him after he was on the ground, Am. Compl. ¶ 29, the video clearly shows that Deputy Williams applied no additional force than necessary to maneuver Mullins into a position where he could more easily place handcuffs on him. Once Mullins was in handcuffs, Deputy Williams did not use any additional force.

Following this interaction, Mullins provided his identification information. Paramedics arrived and provided medical aid. Mullins was offered a ride to the hospital but refused. When asked by Smith what Mullins did, Deputy Williams replied, "he didn't follow the lawful commands of a Texas peace officer." Dkt. No. 5-1 at 0:08:07. He later explained to Smith, "I have every right to identify everyone on location to ensure that my safety, your safety, and everything that's going on around me," *id.* at 0:09:46, and that "once I informed him that he was detained, he attempted to walk off . . . twice," *id.* at 0:10:52. Deputy Williams later explained to Mullins "I do have the right as a Texas peace officer to identify everybody on location . . . that's our standard policy." *Id.* at 0:18:44-58. He offered to let Mullins speak with his supervisor, but Mullins declined. Deputy Williams then released Mullins. At no point during the encounter did Smith accuse Mullins of domestic violence or any wrongdoing, nor did Mullins admit to any wrongdoing.

On December 29, 2021, Mullins filed a civil complaint against Deputy Williams and Medina County, Texas. The Complaint raised a claim under 42 U.S.C. § 1983 against Deputy Williams, alleging excessive force in violation of the Fourth Amendment. *See* Am. Compl. at 9. The Complaint further alleged facts and presented arguments that could arguably be construed as asserting an unlawful-seizure claim. *Id*. ¶ 55. The Complaint also raised a *Monell* claim against Medina County, alleging the sheriff's office had a standard policy requiring identification of all subjects on location during consensual encounters, and that constitutional violations are a likely outcome of such a policy. *See id*. at 16-17.

On February 10, 2023, the Court issued an order granting Mullins leave to file an Amended Complaint and mooting Defendants' then-pending motion to dismiss. *See* Dkt. No. 41. Defendants then re-urged the present motion to dismiss. The Court held a hearing on the motion on May 10, 2023, at which all parties appeared through counsel of record. Defendants acknowledged at the hearing that the Amended Complaint asserts a claim for excessive force and that it could be construed as also making a claim of unlawful seizure. Plaintiff clarified through counsel that he is raising an excessive-force claim with respect to Deputy Williams's actions.

**Analysis**

The § 1983 claim against Deputy Williams should be dismissed, because Mullins has failed to carry his burden to overcome Deputy Williams's assertion of qualified immunity. The request to dismiss the *Monell* claim should be denied, because the Amended Complaint identifies a policymaker, states sufficient facts supporting an allegation that the County had a policy that was the moving force behind an alleged constitutional violation, and alleges that the likely outcome of such a policy is the violation of constitutional rights.

### A. The Motion to Dismiss Should Be Granted as to the Excessive-Force Claim Against Deputy Williams.

When qualified immunity is asserted at the motion to dismiss stage, like here, a court has an "obligation . . . to carefully scrutinize [the complaint] before subjecting public officials to the burdens of broad-reaching discovery." *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263-64 (5th Cir. 2019) (quotation marks omitted and alterations in original). Once the defense is invoked, the burden is on the plaintiff to show qualified immunity does not apply. *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008). Taking the pleadings as true at the motion-to-dismiss stage, the plaintiff must show that (1) the defendant violated a statutory or constitutional right and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the challenged conduct. *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021) (citing *Morgan v. Swanson*, 659 F.3d 359, 370-71 (5th Cir. 2011) (en banc)); *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007). In other words, the court must determine whether a plaintiff's pleading "asserts facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (quotation omitted); *Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022) (same).

Even assuming the complaint sufficiently states a constitutional violation, Deputy Williams's assertion of qualified immunity requires the Court to determine whether Deputy Williams's actions were objectively unreasonable in light of "clearly established" law. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000); *Freeman*, 483 F.3d at 410-11. Mullins must therefore "'point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity.'" *Rogers v. Hall*, 46 F.4th 308, 312-13 (5th Cir. 2022) (quoting *Morgan*, 659 F.3d at 371-72); *Hanks v. Rogers*, 853 F.3d 738, 747 (5th

Cir. 2017). While prior cases providing the right's contours need not be factually identical to the case at hand, they must be sufficiently similar to give "reasonable warning that the conduct" at issue violated a right. *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017). In addition, in an "obvious case" of a constitutional violation, the so-called *Graham* factors[2] can be independently sufficient to show a violation of clearly established law. *Hanks*, 853 F.3d at 747.

Mullins primarily argues that Deputy Williams should not enjoy qualified immunity because this is an "obvious case" of a constitutional violation, but that argument fails to persuade. Given the totality of the circumstances, there is some question as to whether and to what extent Deputy Williams could or could not lawfully arrest or detain Mullins. Moreover, the amount of force used was not "obviously" excessive. And once Mullins was on the ground, Deputy Williams used no more force than necessary to put Mullins in handcuffs. The physical injury resulting from the takedown appears relatively minor. Because this is not an obvious case subject to the exception mentioned in *Hanks*, Mullins must therefore point to specific holdings involving situations similar enough to the facts presented here to demonstrate Deputy Williams's actions were objectively unreasonable in light of law that was "clearly established" at the time of the incident.

Attempting to carry his burden, Mullins's response points to two cases, the aforementioned *Hanks v. Rogers* and *Darden v. City of Fort Worth*. Neither is sufficiently on point. *Darden* involved a more extreme and obviously excessive use of force. *See Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018) (officer threw unresisting suspect to the ground and twice tased him). And *Hanks* involved a routine traffic stop during which Hanks offered only verbal challenges to the officer and never attempted to walk away or actively resist. 853 F. 3d at

---

[2] *See infra* pp. 10-11.

749. Meanwhile, none of the additional complicating factors faced by Deputy Williams were present in *Hanks*, such as information sufficient to potentially place a reasonable officer in suspicion of domestic violence, information about guns potentially on the property, and the exigent need to assess a potentially volatile scene upon arrival to ensure the safety of those present.

In Supplemental briefing, Mullins identifies three additional cases. One is an unpublished Fifth Circuit decision, one is a district court decision issued after the events in this case took place,³ and the third is a precedential Fifth Circuit opinion. Although both Fifth Circuit cases demonstrate generally that an officer may not use certain degrees of force against a person who is not physically resisting or attempting to flee, neither is sufficiently on point. *See Cooper v. Brown*, 844 F.3d 517, 525 (5th Cir. 2016) (applying precedent finding it objectively unreasonable to tase arrestee or slam arrestee's face into vehicle in light of non-resistance to fact pattern where officer permitted a dog to continue biting a compliant arrestee); *Bone v. Dunnaway*, 657 F. App'x 258, 263 (5th Cir. 2016) (noting qualified immunity is generally denied at summary judgment where plaintiff offered verbal resistance but was not fleeing, and citing cases). Notably in *Bone*, an unpublished case, there was "no verbal command that she stop, no arrest, and no flight." 657 F. App'x at 264. Here, although Defendants overstate the degree to which Mullins was fleeing and resisting, the video clearly shows Mullins was walking away and that there was a verbal command. These facts, plus the added possibility that there were guns on the property, distinguish this case from those cited by Mullins. And as the Fifth Circuit clarified in *Cooper*, "we do not say that *any* application of force to a compliant arrestee is *per se* unreasonable, and we do not opine on the line of reasonableness." 844 F.3d at 524

---

³ *Muslow v. City of Shreveport*, 491 F. Supp. 3d 172 (W.D. La. 2020).

(emphasis in original). Instead, each court must consider the facts at hand as compared to applicable precedent, and thereby determine what is objectively reasonable in light of clearly established law. In the Court's view, the case law does not support a finding that the actions alleged here, in light of the totality of the circumstances, represent an objectively unreasonable violation of "clearly established" law.

In short, the facts and circumstances presented in the Amended Complaint and the video footage, as compared to the facts presented in prior decisions on these issues, reflect at most a mistaken arrest or detention in a complex, fast-developing situation, culminating in a possibly unjustified use of force resulting in a relatively minor injury. Qualified immunity, however, protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "The immunity inquiry is intended to reflect the understanding that 'reasonable mistakes can be made.'" *Pasco v. Knoblauch*, 566 F.3d 572, 581 (5th Cir.2009) (quotation omitted). While Deputy Williams's actions may have potentially crossed a constitutional line, they were not objectively unreasonable in light of clearly established law. The motion to dismiss should be granted as to the excessive-force claim against Deputy Williams.

**B.  The Motion to Dismiss Should be Denied as to the *Monell* Claim.**

A county cannot be held liable for constitutional violations via § 1983 under a theory of respondeat superior. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690, 694 (1978); *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403, (1997). Instead, a plaintiff must establish liability against a county by first identifying a policymaker and an official policy, and then by showing that the policy was the "moving force" behind the stated constitutional violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694).

Mullins's Amended Complaint alleges facts sufficient to support each of these elements at this stage in the litigation, even if questions remain about whether a constitutional violation occurred. The Amended Complaint identifies Sheriff Randy Brown as a policymaker for Medina County Sheriff's Office and identifies an alleged policy of "[r]equiring the identification of all subjects on location — during consensual encounters — when dispatched to a call, irrespective as to whether the subject was in any way involved, implicated, accused, or otherwise connected to the nature of the call." *See* Am. Compl. ¶ 92. The existence of this alleged policy is based on Williams's statements to Mullins that he had "a right as a Texas peace officer to identify everybody on location," and "that's our standard policy." Dkt. No. 5-1 at 0:18:44-58; Resp. at 16-17 (citing transcript of video recording at 25:9-16). The Amended Complaint provides other examples of deputies (mainly Deputy Williams) requesting identification information from people at a scene. Am. Compl. at 17-19. Deputy Williams specifically referenced the "standard policy" to justify his actions. Deputy Williams's statements and the allegations in the Amended Complaint represent sufficient factual allegations to demonstrate the alleged policy exists and was the "moving force" behind his actions.

Furthermore, although the claim against Deputy Williams cannot survive his invocation of qualified immunity, the Amended Complaint sufficiently alleges a Fourth Amendment violation to allow a *Monell* claim to proceed. To prevail on an excessive force claim, a plaintiff must show "(1) [an] injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Freeman*, 483 F.3d at 416 (citations omitted). To determine whether force was excessive and unreasonable, courts apply the three *Graham* factors: (1) the severity of the crime, (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) whether the suspect is

actively resisting arrest or attempting to flee arrest. *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Taking all of Mullins's allegations as true, unless clearly contradicted by the video evidence, the following was the state of affairs: (1) Mullins suffered an injury directly resulting from the use of force, albeit a relatively minor injury; (2) Mullins was not accused or suspected of a crime, much less a severe one, prior to the use of force; (3) Mullins did not use violence at the scene or threaten it towards anybody; and, finally, (4) Defendants' characterization of Mullins's actions as "fleeing" and actively resisting arrest are exaggerated. On this last point, nothing in the video *clearly* contradicts[4] Mullins's contention in the Amended Complaint that he did not resist. Even Williams described Mullins's actions at the scene as "passive resistance." Dkt. No. 5-1 at 0:03:36. "[W]here an individual's conduct amounts to mere 'passive resistance,' use of force is not justified." *Trammell*, 868 F.3d at 341. And where the *only* resistance is mildly pulling an arm away from an officer, the resistance may be deemed "passive." *See id.* at 342 (finding a reasonable jury could find excessive force was used in part because only resistance was lightly pulling arm away); *see also id.* at 341-42 (discussing *Goodson*, 202 F.3d at 734, 740, and reversing summary judgment decision in favor of defendants where only resistance was pulling arm away). The Amended Complaint therefore sufficiently alleges a constitutional violation, the moving force behind which was the alleged policy.

To successfully make a *Monell* claim, a plaintiff must also demonstrate culpability on the part of the municipality by showing either that the identified policy is itself unconstitutional, or that "a facially innocuous policy . . . was promulgated with deliberate indifference to the known

---

[4] A jury would be entitled to reach its own conclusions regarding the video. The Court, however, must at this stage take the pleadings as true unless they are *clearly* contradicted by video evidence.

or obvious consequences that constitutional violations would result." *Piotrowski*, 237 F.3d at 579 (internal quotation marks omitted); *Liggins v. Duncanville, Texas*, 52 F.4th 953, 955 (5th Cir. 2022). Deliberate indifference is typically demonstrated by showing multiple incidents involving alleged rights violations due to the policy. But the lack of evidence of a pattern of violations is not necessarily fatal at this stage. At this point, the Court must accept that the policy exists as pleaded in the Amended Complaint—that is, that the County *requires* officers to identify all people at a scene, even if they are not suspected of a crime. Sheriff Brown and his staff "should have known," the Amended Complaint alleges, that such a policy would result in "citizens justifiably refusing to provide their information and consequently being detained or arrested illegally and subjected to unjustifiable force." Am. Compl. ¶ 95. Police are generally permitted to ask questions of people not suspected of a crime, including asking for identification, but only "as long as the police do not convey a message that compliance with their request is required." *Goodson*, 202 F.3d at 738-39 (quoting *Florida v. Bostick*, 501 U.S. 429, 435 (1991)). Deputy Williams, in contrast to this legal standard, was apparently under the impression that he had a "right" to identify everyone on the scene during a purely consensual encounter, and that he was actually required to do so by the County's "standard policy." Accordingly, if the alleged policy were actually enforced to its fullest extent, the "known and obvious" result of a requirement of this nature could plausibly be the violation of constitutional rights, such as the excessive force claimed here or perhaps unlawful seizure or arrest.[5]

---

[5] As noted in the Facts section above, Mullins's counsel acknowledged at the hearing that he is asserting only an excessive-force claim against Deputy Williams, but Defendants' counsel acknowledged that the Complaint could be construed as also alleging an unlawful-seizure or illegal-arrest claim. *See, e.g.*, Am. Compl. ¶ 55 (alleging Mullins's detention was "without reasonable suspicion or probable cause—and the force used against him were without legal authority and excessive, in violation of the Fourth Amendment guarantee against unreasonable

It is difficult to establish that policymakers acted with "deliberate indifference" based only on a single incident of a violation of constitutional rights. But it is not impossible, *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010), and Mullins is not required to prove his claim at this stage of the litigation. For Mullins to ultimately succeed, he would have to establish that the policy exists as he alleges, and establishing the requisite culpability on the part of the County may well require evidence of multiple constitutional violations resulting from the policy. The strength or weakness of the claim will become clearer with the benefit of discovery. For now, Mullins has done enough to state a claim.

**Conclusion and Recommendation**

For the reasons discussed above, it is recommended that the Motion to Dismiss, Dkt. No. No. 43, be **GRANTED IN PART** and **DENIED IN PART**.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the district court's standing orders. *See* Rule CV-7. The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which

---

searches and seizures."), ¶ 95 (listing illegal arrest and detention along with unjustifiable force as likely outcomes of the policy).

objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 14th day of July, 2023.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE